E-FILED
Monday, 07 February, 2011  02:26:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Daryon McDaniel,
    Plaintiff,

vs.    09-2170

Daniel J. Walsh, Jr., and
Michael Moore,
    Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court is the Defendants' unopposed summary judgment motion [29]. Defendants move for summary judgment pursuant to pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR 7.1(D).

Standard

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely

allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

On July 13, 2009, Plaintiff, Daryon McDaniel filed a complaint against Daniel Walsh, the sheriff of Champaign County and Michael Moore, jail superintendent of Champaign County Correctional Center. On August 5, 2009, the court held merit review Hearing of the plaintiff's complaint. On August 19, 2009, this court entered an order allowing McDaniel to pursue a Section 1983 claim against Sheriff Walsh and Moore for alleged deliberate indifference to McDaniel's safety. In his complaint, brought under 42 U.S.C. § 1983, McDaniel alleges that while he was a pretrial detainee at the Champaign County Correctional Center, he fell backwards while climbing to the upper/top bunk in his cell. McDaniel alleges that Sheriff Walsh and Moore were deliberately indifferent to his safety when they did not provide a ladder for him to climb into the upper bunk at the jail. Defendant's filed an answer to the complaint denying the allegations. Defendants request that the court enter an ordering granting summary judgment in their favor and against McDaniel.

UNDISPUTED MATERIAL FACTS[1]

1. Daniel Walsh is the Champaign County Sheriff. (Daniel Walsh Aff., ¶ 3, attached as Exhibit 1).
2. Michael Moore is the Jail Superintendent for the Champaign County Correctional Center. (Michael Moore Aff., ¶ 3, attached as Exhibit 2).
3. Daryon McDaniel was arrested and taken to the Champaign County Correctional Center

---

[1]All exhibits can be found attached to the Defendants' summary judgment motion [29].

sometime around August 23, 2008. (McDaniel Dep., pgs. 27 – 28, 34 attached as Exhibit 3).
4. During McDaniel's intake/booking interview, he denied being on any medications or under any special orders by any doctors. (McDaniel Dep., pgs. 60 – 61).
5. McDaniel did not have a special permit for a lower/bottom bunk. (McDaniel Dep., pg. 63).
6. Initially, McDaniel was assigned to a cell which consisted of an empty upper/top and lower/bottom bunk. McDaniel chose the lower bunk. (McDaniel Dep., pgs. 34 – 35).
7. McDaniel stayed in this cell by himself for a couple of days, occupying the lower/bottom bunk. (McDaniel Dep., pgs. 36 – 37).
8. On August 25, 2008, McDaniel was instructed that he would be moving cells and getting a cell mate, Mr. Arnett. (McDaniel Dep., pgs. 35 – 37).
9. McDaniel was transferred to Mr. Arnett's cell, where Mr. Arnett was occupying the lower/bottom bunk. Consequently, McDaniel took the upper/top bunk. (McDaniel Dep., pgs. 37 – 38).
10. Between August 25, 2010 and August 27, 2010, McDaniel was able to get in and out of the upper/top bunk without incident. (McDaniel Dep., pg, 39).
11. Neither Sheriff Walsh nor Moore spoke with McDaniel prior to his fall on August 27, 2008. (Walsh Aff., ¶ 6); (Moore Aff., ¶ 5); (McDaniel Dep., pg. 26).
12. There were no correctional officers, medical staff, or anyone else that advised Sheriff Walsh or Moore that McDaniel was medically or otherwise incapable of having the upper/top bunk or needed a ladder to climb into the upper/top bunk. (Walsh Aff., ¶ 7); (Moore Aff., ¶ 6).
13. On August 27, 2008, McDaniel tried to climb into his bed. He made it three-quarters of the way up and fell backwards onto his left shoulder and left ankle. (McDaniel Dep., pg. 38).
14. Officer Tarr and a nurse at the Champaign County Correctional Center came to McDaniel's aid. (McDaniel Dep., pgs. 38 – 39).
15. McDaniel was transported to Carle Hospital where he was seen and treated in the emergency room. (McDaniel Dep., pg. 39).
16. McDaniel was diagnosed with a fracture of his foot. (McDaniel Dep., pgs. 40 – 41).
17. Upon his return from Carle Hospital, McDaniel bonded out of the Champaign County Correctional Center. At that time, the nurse advised him that he should attend his follow-up appointments. (McDaniel Dep., pgs. 24 - 25, 41).
18. Roughly one year later, on July 13, 2009, McDaniel placed his complaint on file. (McDaniel Dep., pg. 17).
19. At that time, he was incarcerated at the Jacksonville Correctional Center and was informed there by a law clerk that as a condition precedent to filing a lawsuit he had to file a grievance with the Champaign County Correctional Center. (McDaniel Dep., pg. 18).
20. McDaniel has articulated his complaint against Sheriff Walsh as follows:

> "A. I think they should have took some type of climbing apparatus for people who – let's say may have arthritis. People who would

3

    have problems climbing on a bunk bed that's probably three and a
    half to four foot high in the air and without having to jump up
there. Or let's say climb on another inmate's bed in order to – to get up there. 'Cuz that was the
only means of having to get up. And I want to say that the bunk bed is probably at least three
and a half to four foot high. (McDaniel Dep., pg. 49).
    Q. What else, if anything, what else do you think Dan Walsh did
    wrong in this case?
    A. Dan Walsh, being the Sheriff of the Champaign County Jail, I
    also feel that he should have been responsible for the damages that
    I done on the 27th.
    Q. What you're saying is essentially paying the medical bills?
    A. That - - that's correct." (McDaniel Dep., pgs. 49 – 50).

21.  McDaniel has acknowledged that neither Sheriff Walsh nor Moore singled Plaintiff out or deliberately did anything to him.
    A. And – and – and when you use the word deliberately, there's
    nothing deliberately done to me by – by Dan Walsh nor the
    Superintendent Moore.
    Q. O.K.
    A. They – they, you know, they treat me no differently than they
    would treat any other inmate there.
    Q. O.K.
    A. So there was nothing done as a deliberate act or cruel or
    unusual
    punishment or anything of that nature.
    Q. So other than the inaction of not having a ladder there, is there
    anything else that you think that Mr. Walsh did wrong?
    A. No." (McDaniel Dep., pgs. 53 – 54).

22.  Moore and Sheriff Walsh are named as Defendants because of their positions of authority at the Champaign County Correctional Center. (McDaniel Dep., pg. 54).
23.  McDaniel believes that Moore was deliberately indifferent to McDaniel as he did not provide a ladder to climb to the upper/top bunk and did not pay McDaniel's medical bills. (McDaniel Dep., pg. 55).
24.  Prior to August 27, 2008, Sheriff Walsh had no knowledge of McDaniel's need, if any, for a ladder to climb to the upper/top bunk or for a lower/bottom bunk. (Walsh Aff., ¶ 8).
25.  Prior to August 27, 2008, Moore had no knowledge of McDaniel's need, if any, for a ladder to climb to the upper/top bunk or for a lower/bottom bunk. (Moore Aff., ¶ 7).
26.  Had McDaniel made his need for a ladder known to Sheriff Walsh and/or Moore, and he had an objectively verifiable need, a lower/bottom bunk would have been provided to McDaniel. (Walsh Aff., ¶ 9); (Moore Aff., ¶ 8).

## Discussion and Conclusion

The scope of an individual's right to be free from punishment-and, derivatively, the basis for an claim of deliberate indifference action brought under § 1983-hinges on his status within the criminal justice system. . . .On one end of the spectrum are sentenced prisoners. The Eighth Amendment protects these individuals only from the infliction of cruel and unusual punishment, which is often defined in the prison context as the " 'unnecessary and wanton infliction of pain.'" Pretrial detainees, by contrast, have not been convicted or sentenced and thus are not yet "punishable" under the law. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("[A pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). This means that pretrial detainees "may not be 'punished' by the state in any way." *Wilson*, 83 F.3d at 875 (emphasis added). As such, pretrial detainees couch deliberate indifference claims as violations of their Fourteenth Amendment rights to due process, not infringements on the Eighth Amendment's ban on cruel and unusual punishment. . . .

Thus "[t] he standard for determining when conditions of pretrial confinement violate due process is 'whether those conditions amount to punishment to the detainee.'" *Pippins v. Adams County Jail*, 851 F.Supp. 1228 (C.D. Ill. 1994) (citation omitted). "On either understanding of the Eighth Amendment's use of the word 'punishments,' the standards applicable to complaints by convicts and by pretrial detainees about unsafe conditions of confinement merge." *Hart*, 396 F.3d at 892 (citations omitted); *see also Stone-El v. Sheahan*, 914 F.Supp 202, 205 (N.D. Ill. 1995). "[A] pretrial detainee claiming that prison officials inflicted unconstitutional punishment typically must allege both a subjective component – the prison officials acted with the requisite state of mind – and an objective component – the alleged punishment was sufficiently serious." *Stone-El*, 914 F.Supp. at 205 – 06; *see also Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008); *Redman v. Evans*, 09-cv-606, 2010 WL 915215, at *2 (S.D. Ill., Mar. 11, 2010).

"First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's
act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Not all jail conditions trigger Constitutional scrutiny, only deprivations of basic human needs such as food, clothing, shelter, medical care, sanitation, and physical safety. *Pippins*, 851 F.Supp. at 1232; *Redman*, 2010 WL 915215, at *2 (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992)). It is well established that, inmates cannot expect the amenities, conveniences, and services of a good hotel . . . the Constitutional test requires courts to look to the evolving standards of decency that mark the progress of a maturing society." *Foster v. Sangamon County Jail*, No. 07-3202, 2008 WL 4491944, at * 4 (C.D. Ill. Sept. 30, 2008) (citations and internal quotations omitted).

Second, the "prison official must have exhibited deliberate indifference to an inmate's health or safety." *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The deliberate indifference standard is a subjective one." *Estate of Novack v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). "To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v.*

5

*Brennan*, 511 U.S. at 834). The subjective component requires "that individual prison officials had subjective knowledge of the risk of harm, which they personally disregarded." *Grieveson*, 538 F.3d at 775; *see also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) ("The minimum intent required is '*actual* knowledge of *impending* harm *easily* preventable.'"); *Redman*, 2010 WL 915215 at *2; *Johnson v. Delgado*, No. 09-CV-420, 2010 WL 746984, at *4 (S.D. Ill. March 1, 2010); *Wheeler v. Walker*, No. 08-C-1637, 2010 WL 1541324, at *2 (N.D. Ill. April 15, 2010). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 9 846 (1994). "It is well-settled that mere negligence is not enough." *Redman*, 2010 WL 915215, at *3 (citations omitted).

Sheriff Walsh and Moore are entitled to summary judgment because they were not deliberately indifferent to McDaniel's safety. The only conceivable way that Defendants Sheriff Walsh and/or Moore could be held liable to McDaniel for failure to provide a ladder to the top bunk is if they were aware that he had a specific need for such a ladder and that the deprivation of a ladder would likely cause him serious risk of harm. There is no evidence that McDaniel had such a need or that Sheriff Walsh and/or Moore knew of McDaniel's need, if any. In fact, neither Sheriff Walsh nor Moore spoke with McDaniel prior to his fall, nor did any correctional officers, medical staff, or anyone else advise the Defendants that McDaniel was medically or otherwise incapable of having the upper bunk.

A ladder to the upper/top bunk is not one of life's necessities and therefore Plaintiff fails to satisfy the objective component applicable to his claim. Inmates and pretrial detainees are not constitutionally guaranteed a ladder to an upper bunk. "Although ladders to the top bunk and shelves, desks and chairs might have made his cell more pleasant, these items are hardly a life necessity." *Sherman v. Lang*, No. 92-C-2192, 1998 WL 111649, at *7 (N.D. Ill. 1998) (denying plaintiff's Eighth Amendment conditions of confinement claim based on deliberate indifference to plaintiff's safety for a myriad of complaints, including that no ladders were provided to reach the top bunk). "Although it is inconvenient for plaintiff to use the toilet and sink to climb to his bunk because there was no ladder . . . 'only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Barbosa v. McCann*, No. 08-C-5012, 2009 WL 2913488, at *4 (N.D. Ill. Sept. 8, 2009) (citations omitted) (dismissing plaintiff's conditions of confinement claim premised upon the lack of a ladder to the upper bunk); *Powers v. Deatherage*, No. 02-1372, 2009 WL 856296, at *9 (C.D. Ill. March 30, 2009) (holding that a top bunk assignment is permissible unless a low bunk was medically required/ordered by a treating physician). The lack of a ladder is not sufficiently grave to form the basis of a constitutional violation. As McDaniel does not have an objectively sufficiently serious deprivation, his claim against Walsh and Moore fails and summary judgment is granted in favor of the Defendants.

Plaintiff's claim is for an allegedly unconstitutional condition of confinement; deliberate indifference to Plaintiff's safety by not providing a ladder. Plaintiff has not alleged a claim for deliberate indifference to a serious medical need. Nor could he. McDaniel has failed to show

that he had a serious medical need for a lower bunk and/or a ladder to climb into the top bunk. McDaniel was not under doctor's orders which restricted him from climbing into the top bunk or otherwise required him to be housed on a lower bunk, nor was McDaniel's need so obvious that even someone who is not a physician would have recognized McDaniel's need for a ladder. *See Jackson v. Illinois Medi-Car Inc.,* 300 F.3d 760, 765 (7th Cir. 2002) (defining a serious medical need). Upon his arrest, McDaniel was booked at the Champaign County Correctional Center. He advised jail staff that he was on no medications at that time, he was under no special orders by any doctor, and did not obtain or request a special permit for a lower bunk. Furthermore, McDaniel did not tell Walsh and/or Moore about his need for a ladder. Whether framed as deliberate indifference to Plaintiff's safety or a serious medical need, Plaintiff's claim fails to satisfy the objective component of a deliberate indifference claim. A ladder to an upper bunk is not constitutionally required nor has McDaniel demonstrated he had an objectively serious medical need for a ladder. For these reasons, summary judgment is granted in favor of the Defendants.

Further, neither Sheriff Walsh nor Moore were involved or acquiesced in the alleged violation of McDaniel's rights or knew that McDaniel's lack of a ladder to climb to the upper/top bunk created a substantial risk of serious harm. "The doctrine of *respondeat superior* does not apply to § 1983 claims; to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right." *Wheeler*, 2010 WL 1541324, at *2 (citation omitted). Merely exercising supervisory authority over those who have allegedly violated plaintiff's rights does not give rise to liability. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "Although direct participation by a defendant is not necessary, there must be some showing that he acquiesced in some demonstrable way in the alleged constitutional violation." *Foster v. Sangamon County Jail*, No. 07-3202, 2008 WL 4491944, at *5 (C.D. Ill. Sept. 30, 2008) (citations omitted). "In order to hold a supervisory defendant liable, the plaintiff must demonstrate that the supervisor knew about the unconstitutional conduct, facilitated it, approved it, condoned it, or purposely turned a blind eye to it for fear of what he might see." *Foster*, 2008 WL 449144, at * 5 (citation omitted). Here, as in *Foster*, "Plaintiff has not shown the conditions were unconstitutional, but even if he could, there is no evidence of any defendant's involvement or acquiescence in the unconstitutional conditions." *Foster*, 2008 WL 449144, at * 5.

Plaintiff acknowledges that his claim against Sheriff Walsh and Moore is premised upon their positions of authority at the Champaign County Correctional Center, not anything the Defendants did or did not do. He further acknowledges that neither of the Defendants was deliberately indifferent to his safety or that they did anything which could be construed as cruel and unusual punishment. He has not alleged any individual involvement on the part of either Sheriff Walsh and/or Moore, but rather rests his claim on the argument that these Defendants were negligent for not putting a ladder in his cell. The gravamen of Plaintiff's complaint is that the Defendants caused or participated in the decision to not equip each cell with a ladder. As noted above, there is no constitutional right to a ladder. The lack of a ladder to the top bunk is not *per se* deliberate indifference to a detainee's safety. Rather, McDaniel must prove that Sheriff Walsh and/or Moore (1) knew of McDaniel's specific safety need for a ladder; and (2) consciously declined to provide it in the face of McDaniel's known need. *See Grieveson*, 538

7

F.3d at 775. McDaniel has not offered such proof. Plaintiff's safety need for a ladder, if any, was not known. McDaniel was in his cell using the top bunk without incident for two days. During that time, he was not under doctor's orders for a low bunk nor did he communicate with either Sheriff Walsh and/or Moore that he needed a ladder. In fact, Sheriff Walsh and Moore did not have any contact with McDaniel until after his fall. The Champaign County Correctional Center has a solution for detainees who cannot get into the upper bunk. Had McDaniel made his need known and he had an objectively verifiable need for a lower bunk, he would have been provided one. Here, the risk of harm to McDaniel was not known to Sheriff Walsh or Moore and therefore the subjective component of deliberate indifference is not established and Plaintiff's claim fails.

Further, Defendants advised the court that McDaniel failed to comply with this court's June 28, 2010 order directing Plaintiff to respond to the Defendants' discovery requests and to file a notice of compliance. On May 11, 2010, this Court directed McDaniel to show good cause why he has failed to cooperate with discovery. Defendants advise the court that to date he has not done so. On June 28, 2010, this court entered an order allowing Plaintiff until July 9, 2010 to respond to Defendants' discovery requests and to file a notice of compliance. He did not do so by the date ordered. On July 12, 2010, McDaniel filed a notice of compliance advising that he was responding to Defendants' interrogatories (d/e #26 and #27). On that same day, July 12, 2010, McDaniel delivered to the Defendants' attorney's office a copy of d/e #26 and #27, together with answers to interrogatories propounded by Defendant Michael Moore and various signed Releases. However, McDaniel did not respond to Defendant Sheriff Walsh's or Defendant Moore's Request for Production of Documents, other than to return the signed Releases, nor did he respond in any way to the interrogatories propounded by Sheriff Walsh. Simply put, McDaniel has not responded to all the Defendants' discovery requests. McDaniel was "forewarned that if he fails to comply with this order, his lawsuit will be dismissed, with prejudice."

Finally, M cDaniel's claims for injunctive relief are moot. McDaniel's claims for injunctive relief for conditions specific to the Champaign County Correctional Center are barred as Plaintiff has been released from incarceration from that jail. See *Foster v. Sangamon County Jail*, No. 07-3202, 2008 WL 4491944, at *5 (C.D. Ill. Sept. 30, 2008). Here, McDaniel's prayer for relief seeks that an order be entered requiring the Champaign County Correctional Center "to install climbing ladders on all double bunk beds throughout the 'Champaign County Jail.'" (d/e #1, pg. 8). McDaniel was released from the Champaign County Correctional Center on August 27, 2008. (UMF ¶ 17). "Consequently, plaintiff's claims for injunctive relief are moot." *Foster*, 2008 WL 4491944, at *5 (citation omitted).

McDaniel fell in his cell while trying to climb to the top bunk bed and as a result suffered injuries. What happened was an accident for which these Defendants are not liable in negligence, much less were they deliberately indifferent to McDaniel's safety. There is no constitutional right to a ladder to climb to an upper/top bunk in a jail cell and thus, McDaniel's

8

claim of deliberate indifference fails to satisfy the objective component applicable to his Constitutional claim. Furthermore, McDaniel has demonstrated no specialized need for a ladder or a lower bunk. What's more, these Defendants were unaware of McDaniel's need, if any, during his incarceration. He did not request a lower bunk, he had no medical orders requiring a lower bunk or a ladder, and at no time did he speak with either of these Defendants until after his fall. For these reasons, Defendants Sheriff Walsh and Moore are entitled to and granted summary judgment.

IT IS ORDERED:

1. The Defendants' unopposed motion for summary judgment [29] is allowed. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. Any pending motions are denied as moot, and this case is terminated.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).
3. Although his lawsuit is dismissed, the plaintiff is still obligated to pay the filing fee in full and to notify the clerk of the court of any change in his address and phone number.

Enter this    7th    day of February 2011.

/s/ Michael P. McCuskey
_____
Michael P. McCuskey
Chief United States District Judge